Case 4:24-cv-03226   Document 16   Filed on 12/29/25 in TXSD   Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
December 29, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **KIMBERLY R.,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | CIVIL ACTION NO. 4:24-cv-3226 |
| § | |
| **COMMISSIONER OF THE** § | |
| **SOCIAL SECURITY** § | |
| **ADMINISTRATION,** § | |
| § | |
| **Defendant.** § | |

# MEMORANDUM OPINION

Plaintiff Kimberly R. ("Plaintiff") filed this lawsuit against Defendant Commissioner of the Social Security Administration ("Commissioner") seeking review of the denial of benefits under Title II of the Social Security Act. (ECF Nos. 1, 12). Pending before the Court[1] are the Parties' cross-motions for summary judgment. (ECF Nos. 12–13).[2] Based on a review of the motions, arguments, and relevant law, the Court **GRANTS** Commissioner's Motion for Summary Judgment (ECF No. 13) and **DENIES** Plaintiff's Motion for

---

[1] The parties consented to proceed before a Magistrate Judge for all proceedings under 28 U.S.C. § 636(c). (ECF No. 7).

[2] Plaintiff filed a "Brief" in support of their suit. (ECF No. 12). Because the filing provides a statement of undisputed material facts and argues for reversal of the Commissioner's administrative decision, the Court construes the filing as a motion for summary judgment (*id.*).

Summary Judgment (ECF No. 12). The Court **AFFIRMS** the Commissioner's decision, and the case is **DISMISSED WITH PREJUDICE**.

I. Background

Plaintiff filed a claim for disability insurance benefits on November 2, 2021, alleging disability starting on October 11, 2021. (ECF No. 10-1 at 24).[3] Plaintiff's claim was initially denied by the Social Security Administration on August 9, 2022, and again on reconsideration on July 5, 2023. (*Id.*). On July 12, 2023, Plaintiff requested a hearing before an Administrative Law Judge. (*Id.*). On December 7, 2023, Administrative Law Judge Daniel Whitney (the "ALJ") held a telephonic hearing. (*Id.*). Plaintiff was represented by counsel at the hearing. (*Id.*). Jessica Earl, a vocational expert ("VE"), appeared and testified at the hearing. (*Id.*).

On February 1, 2024, the ALJ issued a decision, finding Plaintiff not disabled at Step Five.[4] (*Id.* at 26–37). At Step One, the ALJ found Plaintiff engaged in substantial gainful activity during the fourth quarter of 2021. (*Id.* at 26). At Step Two, the ALJ found Plaintiff has the following severe

---

[3] The Administrative Record in this case can be found at ECF No. 10.

[4] In considering a disability claim, an ALJ must conduct a five-step evaluation that examines: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002) (citing 20 C.F.R. § 404.1520).

2

impairments: "morbid obesity; spinal fusion; Ehlers-Danlos syndrome; anxiety; and depression (20 CFR 404.1520(c))." (*Id.* at 27). At Step Three, the ALJ found Plaintiff: "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." (*Id.*). The ALJ determined that Plaintiff has the Residual Functional Capacity ("RFC") to: "perform light work as defined in 20 CFR 404.1567(b) except should be limited to simple non-production rate pace jobs with only occasional interaction with the public, coworkers, and supervisors." (*Id.* at 29). At Step Four, the ALJ found Plaintiff "is unable to perform any past relevant work." (*Id.* at 36). At Step Five, the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform—such as a merchandise marker, housekeeper, and router—and therefore Plaintiff was not disabled as defined under the Social Security Act. (*Id.* at 36–37).

Plaintiff appealed to the Appeals Council and the Appeals Council denied Plaintiff's request for review on May 23, 2024. (*Id.* at 8). Thus, the ALJ's decision represents the Commissioner's final decision in the case. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

## II.     Legal Standard

The Court's review of a final decision of the Commissioner on a Social Security disability claim is exceedingly deferential. *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). "[R]eview of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard.'" *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). When the Commissioner's decision is reached by applying improper legal standards, the decision is not supported by substantial evidence. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes 'more than a mere scintilla' but 'less than a preponderance' of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). "'Any findings of fact by the Commissioner which are supported by substantial evidence are conclusive.'" *Heck v. Colvin*, 674 F. App'x 411, 413 (5th Cir. 2017) (quoting *Taylor*, 706 F.3d at 602).

Even so, judicial review must not be "so obsequious as to be meaningless." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quotations omitted). The substantial evidence standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence

supporting the Commissioner's findings. *Singletary*, 798 F.2d at 822–23; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823. The court "'may not reweigh the evidence . . . , nor try the issues *de novo*, nor substitute [its] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.'" *Johnson v. Colvin*, 595 F. App'x 443, 444 (5th Cir. 2015) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)).

### III.  Discussion

#### A. The RFC is Supported by Substantial Evidence

Plaintiff argues the ALJ's RFC finding is not supported by substantial evidence because it fails to properly account for moderate limitations in adapting/managing and fails to adequately reflect all social interaction limitations. (ECF No. 12 at 6). Commissioner argues the ALJ's RFC assessment is supported by substantial evidence and the ALJ correctly found Plaintiff not disabled. (*See* ECF No. 13).

##### 1. Limitations in Adapting/Managing

First, Plaintiff argues the ALJ committed a reversible error because the RFC does not adequately account for moderate limitations in the domain of adapting and managing oneself. (ECF No. 12 at 8). Commissioner argues the

ALJ properly considered the medical evidence and nonmedical evidence in determining Plaintiff's physical and mental RFC. (ECF No. 13 at 9).

"The ALJ makes an RFC determination based on all the relevant medical and other evidence in the record." *Gonzales v. Colvin*, No. 3:15-cv-0685, 2016 WL 107843, at *9 (N.D. Tex. Jan. 11, 2016) (citing 20 C.F.R. § 404.1545(a)(1)). The determination of RFC is the sole responsibility of the ALJ. *Taylor*, 706 F.3d at 602–03. "'There is no requirement that an ALJ's RFC finding must mirror or match a medical opinion.'" *Donna A. v. Comm'r of Soc. Sec.*, No. 5:22-cv-111, 2023 WL 5004867, at *4 (N.D. Tex. July 17, 2023), *report and recommendation adopted sub nom. Donna A. v. Kijakazi*, No. 5:22-cv-111, 2023 WL 5004073 (N.D. Tex. Aug. 4, 2023) (quoting *Nic R. v. Kijakazi*, No. 3:22-cv-00106, 2023 WL 2529930, at *3 (N.D. Tex. Feb. 21, 2023)). "[E]xperienced ALJs can draw their own conclusions based on accurate medical information." *Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018).

Plaintiff, however, argues that the RFC assessment does not account for any limitations in the domain of adapting and managing oneself. (ECF No. 12 at 8–9). Plaintiff specifically argues that although the RFC "limitation to simple works" relates primarily to the domain of understanding, remembering, and applying information, and to the domain of sustaining concentration, persistence, or pace, it does not, however, "account for limitations in responding to demands, adapting to changes, managing psychiatric symptoms,

6

distinguishing between acceptable and unacceptable work performance, setting realistic goals, making plans independently, maintaining basic hygiene and appropriate attire, and being aware of normal hazards and taking precautions against them." (*Id.* at 9). Plaintiff therefore argues the ALJ was "required to explain how the limitation to simple work would in fact account for the limitations in Plaintiff's ability to adapt and manage, but he did not." (*Id.*).

But here, the ALJ adequately accounted for moderate limitations in the domain of adapting and managing oneself. The ALJ explicitly explained:

> As for adapting or managing oneself, the claimant has experienced a moderate limitation. The claimant stated in a function report that she does not handle stress well and is only somewhat OK with changes in routine (Exhibit 6E/7). The claimant also reported trouble adjusting to changes brought about by the COVID-19 pandemic (Exhibit 4F/7). However, records indicate that the claimant's primary treating psychiatrist, Jason Boley, M.D., departed from the Baylor Scott & White Clinic on June 30, 2022, with no noted trouble transitioning to new treating psychiatrist Phillip Antunes, M.D. (Exhibit 7F/14).

(ECF No. 10-1 at 29). Further, the ALJ determined "paragraph B" criteria were not satisfied. As explained by the ALJ, "[t]o satisfy the 'paragraph B' criteria, the mental impairments must result in one extreme limitation or two

7

marked limitations in a broad area of functioning."[5] (*Id.* at 28). However, the ALJ found that Plaintiff had only a moderate limitation with respect to (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself, as evidenced by medical records and function reports. (*Id.* at 28–29). In short, the ALJ concluded that, because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria was not satisfied. (*Id.* at 29).

The ALJ also determined the evidence failed to establish the presence of "paragraph C" criteria because the record did not establish that Plaintiff had a minimal capacity to adapt to changes in her environment or to demands that were not already part of her daily life.[6] (*Id.*). The ALJ found there was no

---

[5] An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis. (ECF No. 10-1 at 28). *See also Acosta v. Astrue*, 865 F. Supp. 2d 767, 790 n.34 (W.D. Tex. 2012) ("'Paragraph B' criteria refer to the degree of functional limitations resulting from an individual's mental disorders in four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation." citing 20 C.F.R. Part 404, Subpart P, App'x 1, § 12.00 *et seq.*; 20 C.F.R. § 404.1520a(c)(3)).

[6] "Paragraph C requires a showing of a 'serious and persistent' mental disorder, i.e., 'medically documented history of the existence of the disorder over a period of at least 2 years' plus evidence of both (1) medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the disorder; and (2) marginal adjustment, i.e., minimal capacity to adapt to changes in one's environment or to demands that are not already part of daily life." *Laird v. O'Malley*, No. 24-cv-00059, 2025 WL 2492980, at *6 (W.D. Tex. Jan. 17, 2025), *report and recommendation adopted sub nom. Laird v. Colvin*, No. 24-cv-59, 2025 WL 540526 (W.D. Tex. Feb. 15, 2025) (citing 20 C.F.R. Part 404, Subpart P, App'x 1, § 12.04).

indication Plaintiff had only a minimal capacity to adapt to any changes in her routine and cited, as an example, records where there was no indication Plaintiff experienced trouble transitioning from her primary psychiatrist to her new treating psychiatrist. (*Id.*). Additionally, the ALJ evaluated the medical opinion evidence and the findings of the state agency medical consultants, and the ALJ found they were only "partially persuasive." (*Id.* at 32–36). In that regard, the ALJ found certain physician opinions unpersuasive and inconclusive because they were delineated by check-mark forms, inconsistent with prior records, or undeserving of controlling weight under federal regulations. (*Id.* at 34–35); *see also Daigle v. Kijakazi*, No. 22-30721, 2023 WL 4501865, at *2 (5th Cir. July 12, 2023) ("'ALJs are no longer required to give controlling weight to a treating physician's opinion, as was mandated by federal regulations and our caselaw in the past.'" (quoting *Webster v. Kijakazi*, 19 F.4th 715, 718–19 (5th Cir. 2021))).

Accordingly, in finding Plaintiff's impairments are not severe enough to meet the criteria of a listing under Step Three of the sequential evaluation, the ALJ supported his determination with a discussion of the relevant evidence. *See Audler v. Astrue*, 501 F.3d 446, 448–49 (5th Cir. 2007). That is, he explained that the medical opinions and other evidence of record did not establish that Plaintiff's symptoms were sufficiently severe to meet or medically equal one of the impairments listed in the Social Security

regulations.[7] (*See* ECF No. 10-1 at 32–34). An ALJ's findings "'regarding the debilitating effect of the subjective complaints are entitled to considerable judicial deference.'" *Haywood v. Sullivan*, 888 F.2d 1463, 1470 (5th Cir. 1989) (quoting *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986)). As such, the Court concludes the ALJ's RFC finding is supported by substantial evidence because it properly accommodates for Plaintiff's limitations in adapting and managing.

2. Social Interaction Limitations

Second, Plaintiff argues the ALJ's RFC finding is not supported by substantial evidence because it fails to adequately reflect all social interaction limitations. (ECF No. 12 at 12). Plaintiff takes issue with the ALJ acknowledging that the prior administrative findings determined Plaintiff "would fare best with only *incidental* contact with public and avoidance of prolonged interpersonal contacts" but formulating an RFC that limited Plaintiff to "*occasional* interaction with the public, coworkers, and supervisors." (*Id.* at 13–15) (emphasis added).

---

[7] *See, e.g.*, ECF 10-1 at 32–34 (finding the prior administrative medical findings at both initial and reconsideration levels only "partially persuasive" because they did not account for additional severe impairments such as obesity and Ehlers–Danlos syndrome; finding Dr. Karen Maness's opinion unpersuasive where her limitations conflicted with her own treatment notes and the consultative findings of Dr. Dave showing only mild degenerative changes; and finding the mental assessments of state agency consultants only partially persuasive because their recommended social and concentration limitations were inconsistent with treatment notes showing normal sustained attention and cooperative, appropriate behavior).

But as discussed above, the ALJ evaluated the medical opinion evidence and the findings of the state agency medical consultants and found the findings of the state agency medical consultants "only partially persuasive." (ECF No. 10-1 at 33–34). In reviewing the medical evidence, the ALJ explained:

> Overall, the record supports an ability to perform simple nonproduction pace jobs with occasional interaction with the general public, coworkers, and supervisors. For instance, [Plaintiff], though she reported severe memory and concentration issues at mental health visits, was noted to have normal sustained concentration and attention at medical examinations (Exhibits 1F/13 and 7F pp. 3 and 15). Additionally, the determination that [Plaintiff] should have only incidental contact with the public and avoidance of prolonged interpersonal contacts is also inconsistent with the medical evidence of record. While [Plaintiff] did report periods of self-isolation and avoidance of social situations and interactions, all reports from medical providers showed [Plaintiff] to be cooperative, attentive, cheerful, and friendly (Exhibits 19F pp. 7, 40, 71, and 104).

(*Id.* at 34). The ALJ therefore appropriately assessed Plaintiff's RFC based on all the relevant evidence in the record and it properly accommodates for Plaintiff's social interaction limitations. *See* 20 C.F.R. § 404.1545(a)(3) (assessing RFC "based on all of the relevant medical and other evidence"). The ALJ was also not required to give any specific evidentiary weight to any administrative medical finding. *Id.* at § 404.1520c(a) (providing ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)).

11

The ALJ found Plaintiff had the RFC to perform light work. (ECF No. 10-1 at 29, 36–37). The ALJ limited Plaintiff's RFC, stating "[she] should be limited to simple non-production rate pace jobs with only occasional interaction with the public, coworkers, and supervisors." (*Id.* at 29). The ALJ then found Plaintiff is unable to perform any past relevant work. (*Id.* at 36). However, the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including merchandise marker, housekeeper, and router. (*Id.* at 36–37). Therefore, the ALJ concluded Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 37).

Based on this review, the Court concludes the ALJ's decision generally reflects the protocol established in the Social Security Act, the ALJ's own regulations, internal policies articulated in Social Security Rulings, and the ALJ's critical fact findings were made in compliance with applicable law. *See Thomas*, 2013 WL 6869652, at *4.

### B. The ALJ's Rejection of Certain Medical Opinions

Next, Plaintiff argues the Commissioner's rejection of the medical opinions of the state agency psychological consultants and of Plaintiff's treating psychologist is based on the ALJ's impermissible lay opinion and not supported by substantial evidence. (ECF No. 12 at 18).

"[A]n ALJ's RFC determination is improperly based on his lay opinion when substantial evidence does not support the RFC." *Moreira v. Comm'r of Soc. Sec. Admin.*, No. 24-cv-00021, 2025 WL 1090895, at *4 (W.D. Tex. Feb. 27, 2025), *report and recommendation adopted*, No. 24-cv-21, 2025 WL 943413 (W.D. Tex. Mar. 28, 2025) (citing *Taylor*, 706 F.3d at 602). "'There is no requirement that an ALJ's RFC finding must mirror or match a medical opinion.'" *Donna A.*, No. 5:22-cv-111, 2023 WL 5004867, at *4 (quoting *Nic R. v. Kijakazi*, No. 3:22-cv-00106, 2023 WL 2529930, at *3 (N.D. Tex. Feb. 21, 2023)).

To support her position that the ALJ substituted his lay opinion, Plaintiff cites the opinions of state agency consultants and of Dr. Emily Worthy ("Dr. Worthy"). (ECF No. 12 at 19). As such, the Court will address each opinion.

At both initial and reconsideration level administrative reviews, the state agency consultants opined Plaintiff had "moderate limitations to all mental functioning areas."[8] (ECF No. 10-1 at 33). The ALJ noted the initial state agency consultant, Dr. Sylvia Chen, opined that Plaintiff "would function best in an environment that that requires only occasional interactions with co-workers, supervisors, and the public in a familiar, low stress setting that has

---

[8] The parties clarify in their briefing, and the administrative record shows, that these medical evaluations were conducted by state agency medical consultants. (*See* ECF No. 12 at 9, 13, 18–19; ECF No. 13 at 4–5, 10–12).

13

no significant changes in task expectations or require high production rate or pace." (*Id.* at 34). The ALJ also noted that, on reconsideration, the state agency medical consultant, Dr. Jacob Tendler, opined Plaintiff "should not be required to memorize or understand detailed or complex instructions and could concentrate and maintain persistence on simple tasks consisting of 1-2 step instructions. . . . [and] would fare best with only incidental contact with public and avoidance of prolonged interpersonal contacts." (*Id.*).

However, as previously mentioned, the ALJ determined the record overall supported Plaintiff had "an ability to perform simple nonproduction pace jobs with occasional interaction with the general public, coworkers, and supervisors," in part because Plaintiff "was noted to have normal sustained concentration and attention at medical examinations." (*Id.*; *see also* ECF No. 10-1 at 284 (Ex. 1F), 480–496 (Ex. 7F)).[9] In that respect, the "ALJ properly used mental status examinations as part of his decision-making process." *Daigle*, 2023 WL 4501865, at *3. Moreover, the ALJ found that Dr. Tendler's opinion that Plaintiff "should have only incidental contact with the public and avoidance of prolonged interpersonal contacts [was] also inconsistent with the medical evidence of record" because "all reports from medical providers showed

---

[9] The ALJ specifically cited the mental status examinations conducted by Dr. Worthy in July 2020 (ECF No. 10-1 at 284 (Ex. 1F)), by Dr. Jason Boley in December 2021 (*Id.* at 482 (Ex. 7F)) and by Dr. Phillip Antunes in July 2022 (*Id.* at 494 (Ex. 7F)).

14

the claimant to be cooperative, attentive, cheerful, and friendly." (ECF No. 10-1 at 34; ECF No. 10-2 at 7, 40, 71, 104 (Ex. 19F)).[10]

Next, Dr. Worthy opined Plaintiff's "symptoms affect her ability to attend work, communicate effectively with co-workers, and concentrate on work-related tasks." (*Id*.). However, the ALJ noted that Dr. Worthy "did not render an opinion discussing what [Plaintiff] could or could not do in a vocational setting." (*Id*.). As such, the ALJ found Dr. Worthy's opinion was limited because, under the federal regulations, a medical opinion is a statement from a medical source about what a claimant *can still do despite* their impairment(s) and whether the claimant has one or more impairment-related limitations or restrictions. *See* 20 C.F.R. § 416.913(a)(2) (emphasis added). The ALJ therefore reasoned Dr. Worthy's statements that Plaintiff was "disabled," "unable to work," or the like, were not medical opinions but were administrative findings dispositive of a case, requiring familiarity with the Regulations and legal standards. (ECF No. 10-1 at 34). In other words, the ultimate issue of disability was reserved to the Commissioner and further evaluation of Dr. Worthy's statement was not warranted. (*Id*.).

---

[10] The ALJ specifically cited medical appointments with Nurse Practitioner Stephanie Page in November 2023 (ECF No. 10-2 at 7 (Ex. 19F)), with Physician's Assistant Natalie Newman in October 2023 (*Id*. at 40 (Ex. 19F)), with Nurse Practitioner Sunday Jennette in August 2023 (*Id*. at 71 (Ex. 19F)), and with Nurse Practitioner Keri Tatum in August 2023 (*Id*. at 104 (Ex. 19F)).

15

The ALJ also considered an October 2023 Mental Residual Functional Capacity Assessment submitted by Dr. Worthy, which mainly consisted of a check-box form. (*Id.* at 35). According to the form, Dr. Worthy checked Plaintiff was either moderately or markedly limited with regards to understanding and memory as well as sustained concentration and persistence, was not significantly limited or moderately limited with regards to social interaction, and was primarily markedly limited with regards to adaptation. (*Id.*). The ALJ, however, noted those designations were not consistent with observations from Plaintiff's other treating physicians, who observed Plaintiff "to be neatly dressed, had good hygiene and grooming, participated well during examinations, was calm, logical and goal directed with good insight and judgment."[11] (*Id.*). The ALJ further noted that in visits from October and November 2023, Plaintiff "was also observed to have normal mood and affect, normal behavior, was noted to be neither anxious nor depressed, and was seen to be smiling, pleasant, and talkative." (*Id.*). In sum, the ALJ found Dr. Worthy's opinion "generally unpersuasive" because "it [was] provided using a standard checkbox form, and although a statement was attached to the form there were no actual clinical notes attached of a

---

[11] The ALJ cited Exhibit 9F pp. 16 and 72; however, the Court notes those exhibits do not appear to contain the ALJ's stated observations. Instead, it appears the ALJ intended to cite Exhibit 18F, pp. 28, 120, 145, 170, 187, which do contain the ALJ's observations.

contemporaneous examination. Additionally, the selections of moderate and marked in all functional areas [was] not consistent with the totality of records received." (*Id.*). As the Fifth Circuit has explained:

> Although the opinion of a claimant's treating physician generally deserves "considerable weight in determining disability," this is not so when the physician's testimony is "brief and conclusory or otherwise unsupported by the evidence." We have previously characterized responses to a "questionnaire format" as "typical 'brief or conclusory' testimony" and declined to accord these responses controlling weight when they lack "explanatory notes" or "supporting objective tests and examinations."

*Heck*, 674 F. App'x at 415 (citation modified).

The ALJ explicitly found the state agency consultants' and Dr. Worthy's opinions were not supported by their findings; instead, the ALJ chose to rely upon the totality of records, including records and reports of other providers, rather than the ALJ's own medical opinion. (*Id.* at 34–35). This goes to the ALJ's analysis of the supportability of the state agency consultants' and Dr. Worthy's opinions. *See* 20 C.F.R. § 404.1520c(c)(1) ("'Supportability' focuses on how well the medical evidence and supporting explanations given by the medical provider support the provider's opinion.").

Moreover, the ALJ's RFC determination need not completely match or mirror a medical opinion so long as his determination is supported with substantial evidence. *See Mendoza v. Comm'r, Soc. Sec. Admin.*, No. 5:24-cv-055, 2025 WL 906225, at *6 (N.D. Tex. Mar. 25, 2025) ("Given that an RFC

17

determination is not required to match or mirror a medical opinion, the ALJ was permitted to develop an RFC that differed from the medical opinions provided while still being supported by substantial evidence."). There is not a lack of evidence or lack of medical findings to support the ALJ's RFC determination. *See id.* at *7 ("This is simply not a case where there are no credible evidentiary sources or medical findings to support the decision."). Because the ALJ used all reports from medical providers, mental examinations, and records from other physicians to support his RFC determination, the ALJ did not substitute his lay opinion for medical opinions and his RFC finding is supported by substantial evidence. *See Jones v. Colvin*, No. 1:16-cv-271, 2017 WL 3896679, at *3 (S.D. Miss. Sept. 6, 2017) (holding the RFC that plaintiff is capable of light duty work was supported by substantial evidence as "the ALJ considered all the medical evidence and [plaintiff's] subjective complaints of pain.").

## IV.   Conclusion

Based on the foregoing, the Court **GRANTS** Commissioner's Motion for Summary Judgment (ECF No. 13) and **DENIES** Plaintiff's Motion for Summary Judgment (ECF No. 12). As such, the Court **AFFIRMS** the Commissioner's decision, and the case is **DISMISSED WITH PREJUDICE**.

**SIGNED** in Houston, Texas on December 29, 2025.

                                        Richard W. Bennett
                                United States Magistrate Judge